UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KIM MARIE MOLESKY**<br><br>**Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | Civ. No. 18-12311 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Kim Marie Molesky brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Social Security Disability benefits ("SSDI") under Title II of the Social Security Act. Molesky seeks to reverse the finding of the Administrative Law Judge ("ALJ") that she has not met the Social Security Act's definition of disabled since February 3, 2014, the alleged disability-onset date. The question is whether the ALJ's decision is supported by substantial evidence. For the reasons stated below, the decision of the ALJ is **AFFIRMED**.

**I. BACKGROUND**[1]

**A. Procedural History**

On April 10, 2014, Molesky filed an application for SSI under Title II of the Social Security Act asserting that she was disabled as of February 3, 2014.

---

[1]  Citations to the record are abbreviated as follows:

"DE __"   =   Docket entry in this case.
"R. __"   =   Administrative Record (DE 5) (page numbers refer to the page numbers in the lower-right corner of the page—not the ECF docket page numbers).

(R. 288). Her application was initially denied on August 23, 2014 and upon reconsideration on June 3, 2015.

On December 20, 2016, Molesky, represented by an attorney, appeared and testified before the ALJ. (R. 50). The ALJ also heard testimony from Dawn Blythe, a vocational expert ("VE"). (R. 75). On April 5, 2017, the ALJ issued a decision finding that Molesky was not disabled within the meaning of the Social Security Act. (R. 10). By order dated June 4, 2018, the Appeals Council upheld the ALJ's decision, rendering it a final decision of the Commissioner. (R. 1)

This action challenging the Commissioner's denial of benefits was filed on August 1, 2018. Initially assigned to Chief Judge Jose L. Linares, it was reassigned to me upon his retirement. (DE 12) Plaintiff requested and obtained several extensions of the deadline for briefing. Because the deadline in this and other cases was not met, the Court ordered counsel to appear in person. (DE 18) Shortly thereafter, on February 2, 2020, plaintiff's brief was filed. (DE 20) The Commissioner's brief was filed on March 17, 2020. (DE 22) No reply was proffered or filed.

**B. Disability**

To qualify for SSDI, a claimant must demonstrate, *inter alia,* that she "s unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the

region where such individual lives or in several regions of the country.

42 .S.C. § 423(d)(2).

### C. The Five-Step Process

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant

numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### D. This Court's Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

Under 20 C.F.R. § 416.927(c), ALJs are required to weigh and evaluate "every medical opinion." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

20 C.F.R. § 404.1502 lists the "acceptable medical sources" that can provide evidence to establish an impairment. "Treating source means [an] acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.927(a)(2) (alterations added). Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is

4

"well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2).

"[A] reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinions was supported by substantial evidence." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.3d 1185, 1190 (3d Cir. 1986)). "The ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

When an ALJ totally rejects a medical opinion, he or she is required to point to "contradictory medical evidence." *Cunningham v. Comm'r of Soc. Sec.*, 507 Fed. App'x 111, 118 (3d Cir. 2012). Where, as here, the ALJ is discounting, rather than rejecting, opinion evidence, he or she must "consider all the evidence and give some reason for discounting the evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or

5

if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

## II. DISCUSSION

### A. The ALJ's Decision

The ALJ followed the five-step process in determining that Molesky was not disabled. The ALJ's findings may be summarized as follows:

**Step One:** The ALJ determined that Molesky had not engaged in substantial gainful activity since the onset date. (R. 12).

**Step Two:** The ALJ determined that Molesky had the following severe impairments: breast cancer in remission, fibromyalgia, degenerative disc disease, degenerative joint disease, posttraumatic stress disorder (PTSD), anxiety disorder and migraines (20 CFR  404.1520(c)). The ALJ found the following non-severe impairments: irritable bowel syndrome (IBS) and hypertension.  (R. 12–13).

**Step Three:** The ALJ determined that Molesky did not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 13)

**Step Four:** The ALJ found that Molesky had the following RFC:

> 5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally push and pull and climb ramps and stairs.  She can never climb ladders ropes, or scaffolds.  She can occasionally balance and stoop, and never kneel, crouch, or crawl.  She can frequently reach, occasionally overhead, and frequently handle and finger.  The claimant must avoid concentrated exposure to extreme temperatures, wetness, humidity, hazardous machinery and unprotected heights.  In addition, the claimant is limited to performing unskilled work with only occasional changes in the work setting and only occasional interaction with the public.  She is further limited to work allowing her to be off-task for up to 10% of the workday, and to be absent from work for 1 day per month.

(R. 13) This RFC, the ALJ found, would not permit Molesky to perform her past relevant work as a school secretary. (R. 20)

**Step Five**: The ALJ took into account the RFC permitting light work with additional limitations, and found that there were jobs that exist in significant numbers in the national economy that Molesky could perform:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as office helper, mail clerk, and photocopy machine operator. Vocational expert Blythe testified that the job of office helper is found under Dictionary of Occupational Titles (DOT) code 239.567-010. The DOT describes this job as unskilled work requiring light exertion, with a Specific Vocational Preparation (SVP) rating of 2, and represented by approximately 73,180 jobs nationally. The job of mail clerk, DOT code 209.687-026, is unskilled light work with SVP 2, and represented by approximately 99,190 jobs nationally. The job of photocopy machine operator, DOT code 789.687-066, and represented by approximately 439,000 jobs nationally.

(R. 21)

On this appeal, Ms. Molesky primarily challenges (1) the ALJ's finding at Step 3 that she did not have a combination of conditions equivalent to a listing; and (2) the ALJ's finding as to her RFC.

### B. Analysis: Step 3

Step 3 sets a higher standard than the overall standard of disability. *See Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). It dictates a finding of disability in a class of cases considered particularly clear, obviating the need to expend regulatory resources on further analysis. That class of cases is defined by the Listings in 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A.

At Step 3, the ALJ is required to analyze all of the impairments that were recognized as severe at Step Two. 20 C.F.R. § 404.1520(a)(4)(iii) (requiring that "[a]t the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find

that you are disabled"). Step 3 of the analysis provides that "when . . . an individual's impairment . . . meets or equals the level of severity described in the Listing, and also meets the durational requirement, disability will be found on the basis of the medical facts alone in the absence of evidence to the contrary." Social Security Ruling 86-8, 1986 SSR LEXIS 15 (hereinafter "SSR 86-8").

The Listings describe impairments the SSA considers per se "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). A claimant must show that his or her impairments, considered alone or in combination, "meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990).

To meet this standard, "the set of symptoms, signs and laboratory findings in the medical evidence supporting a claim must be compared with, and found to be equivalent in terms of medical severity and duration to, the set of symptoms, signs and laboratory findings specified in the listed impairment." SSR 86-8. If a claimant's "impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds" to Step 4 and 5, *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987), at which point the Commissioner "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment." *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S. Ct. 1952, 1953 (1983). *See generally Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005) ("The burden imposed on a claimant at step three is a far more exacting standard than step two's threshold (used to prevent frivolous claims), which requires that a claimant show that she suffers from a 'severe' impairment.").

1. *Mental impairments*

At step 2 the ALJ found the following severe mental impairments: posttraumatic stress disorder (PTSD), anxiety disorder and migraines. At step 3, however, she found that these impairments, singly or in combination, did

not meet or medically equal the criteria of Listings 12.06[2] and 12.15.[3] In doing so, the ALJ discussed the relevant criteria and made findings that were based on substantial evidence.[4]

---

[2] **12.06 Anxiety and obsessive-compulsive disorders (see 12.00B5), satisfied by A and B, or A and C:**

    A. Medical documentation of the requirements of paragraph 1, 2, or 3:
        1. Anxiety disorder, characterized by <u>three</u> or more of the following;
            a. Restlessness;
            b. Easily fatigued;
            c. Difficulty concentrating;
            d. Irritability;
            e. Muscle tension; or
            f. Sleep disturbance.
        2. Panic disorder or agoraphobia, characterized by <u>one</u> or both:
            a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
            b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
        3. Obsessive-compulsive disorder, characterized by <u>one</u> or both:
            a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
            b. Repetitive behaviors aimed at reducing anxiety.
    AND
    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
        1. Understand, remember, or apply information (see 12.00E1).
        2. Interact with others (see 12.00E2).
        3. Concentrate, persist, or maintain pace (see 12.00E3).
        4. Adapt or manage oneself (see 12.00E4).
    OR
    C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
        1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>
        2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

[3] 12.15 Trauma- and stressor-related disorders (see 12.00B11), satisfied by A and B, or A and C:
A. Medical documentation of all of the following:
    1. Exposure to actual or threatened death, serious injury, or violence;

The "paragraph B" criteria require that a claimant establish an extreme limitation of one, or a marked limitation of two, of the four areas of mental

---

      2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
      3. Avoidance of external reminders of the event;
      4. Disturbance in mood and behavior; and
      5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).
 AND
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
      1. Understand, remember, or apply information (see 12.00E1).
      2. Interact with others (see 12.00E2).
      3. Concentrate, persist, or maintain pace (see 12.00E3).
      4. Adapt or manage oneself (see 12.00E4).
 OR
C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
      1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
      2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

[4] "Listings 12.02, 12.03, 12.04, 12.06, and 12.15 have three paragraphs, designated A, B, and C; your mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3); your mental disorder must satisfy the requirements of either paragraph A or paragraph B." *Id.* 12.00(A)(2). Plaintiff's challenge focuses on Paragraph B, and does not address Paragraphs A or C directly.

As to paragraph C, the ALJ, based on substantial evidence of record, found the following:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. The evidence of record does not demonstrate an at least 2-year history of anxiety disorder with ongoing treatment or highly structured setting that has diminished its symptoms and signs. In addition, the evidence does not demonstrate marginal adjustment, that is, minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

(R. 14–15)

functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. 404, Subpart P, Appendix 1, Listing 12.04(B). These impairment-related functional limitations are incompatible with the ability to do any gainful activity. *Id.* A limitation is extreme if "[y]ou are not able to function in this area independently, appropriately, effectively, and on a sustained basis;" and "marked" if "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. 404, Subpart P, Appendix 1, §12.00(F)(2).[5] The ALJ found only mild or moderate (not marked or extreme) limitation in all four areas.

As noted, the ALJ found a "moderate" limitation as to (2) interaction with others and (4) adapting or managing oneself, based on reported panic attacks, confinement to the home, depression/anxiety/PTSD, reported memory loss and sleeping difficulties, and low energy. These symptoms were offset, in the ALJ's view, by the claimant's self-reported ability to get along with others, including those in positions of authority; her relations with her family; and her independent use of public transportation to attend the examination. (R. 14)

The claimant objects, however, that the ALJ should have found "marked" limitations in her ability to (1) understand, remember, or apply information and (3) concentrate, persist, or maintain pace. The ALJ's findings, however, were well supported by the record.

Treating mental health professionals did not note any serious limitations on mental functioning. (R. 19) Dr. D'Amato treated her beginning in 2012. Her panic attacks ended with medication, and she discontinued treatment in 2014. Dr. D'Amato performed tests in which Ms. Molesky recalled 3/3 words, recalled content from earlier in the session and events of the past week, as well as long term events; did well on serial 7s; spelled "world" correctly, and recited

---

[5]  I have laid out these criteria in more detail elsewhere. *See, e.g., Labrador v. Berryhill*, No. CV 18-9195-KM, 2019 WL 2611146, at *6–*8 & nn. 2–5 (D.N.J. June 26, 2019).

12

numbers forward and backward. She had good concentration and did not need frequent refocusing. (R. 18, 369, 404)

Dr. Fulford performed a consultative examination in 2015, spurred by complaints of PTSD and panic attacks as a result of the murder of Ms. Molesky's husband some six years earlier. He noted symptoms including sadness and low energy; his diagnosis was adjustment disorder with mixed emotional features secondary to medical condition, and PTSD. Dr. Fulford performed tests, obtaining similar results to those of Dr. D'Amato, and found no serious functional limitations. (R. 16, 18–19, 403–04)

Ms. Molesky's mental symptoms, after a two-year hiatus in treatment, responded well to medication under the care of Dr. Antiga de la Cruz. (R. 19 (discussing records)) She reported being less depressed and anxious, and her mental status evaluations were "relatively normal" and "relatively benign." Dr. De la Cruz reported that her affect was reactive, her thought processes intact, with no evidence of psychosis. In September 2016, however, Dr. de la Cruz opined that Molesky would be unable to deal with normal work stress, follow instructions, maintain concentration, and so on. The ALJ properly considered the opinion but gave it little weight because it was inconsistent with the rest of the record, as well as the doctor's own treatment notes. (R. 19–20)

The physicians treating the plaintiff's physical ailments also failed to note any serious mental limitations. Dr. Hoffman found Ms. Molesky alert, intelligent, and lucid, with good knowledge of her medical situation. She was able to follow instructions. Dr. Jurado had similar observations. (R. 523, 526, 530) As the ALJ noted, no State agency consultant found that the claimant's medical impairments equaled a listing. (R. 15)

The ALJ briefly but appropriately dealt with additional medical evidence. Indeed she discounted certain unfavorable state and agency opinions which, in her estimation, failed to consider the combined effects of the claimant's impairments. (R. 20)

As discussed in more detail below, the ALJ appropriately considered and dealt with the applicant's subjective complaints. As relevant to mental

13

impairments in particular, the ALJ acknowledged those complaints and took them into account in her findings of mild or moderate limitations. She noted that the claimant reported being able to pay attention for 15 minutes, but had trouble with following instructions or changes in routine. The claimant also however, took care of her personal needs, shopped and prepared meals, managed her own money, and took public transportation. Depression, anxiety, and panic attacks, while noted, had also responded to medication. Substantial evidence underlay the ALJ's balanced findings.

   *2. Physical impairments*

The ALJ appropriately considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (R. 13) She appropriately found that the medical evidence did not establish the requisites: gross anatomical deformity with joint space narrowing, bony destruction, or ankylosis, resulting in inability to perform fine and gross movements or ambulate effectively (1.02); or compromise of a nerve root or the spinal cord with evidence of nerve root compression, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication (1.04) The ALJ also considered Listing 13.10 (breast) in light of the history of breast cancer, addressed by surgery. These criteria, she found, were not met.[6] As the ALJ noted, there is not specific listing for

---

[6]   13.10 Breast (except sarcoma—13.04) (See 13.00K4.)
A. Locally advanced cancer (inflammatory carcinoma, cancer of any size with direct extension to the chest wall or skin, or cancer of any size with metastases to the ipsilateral internal mammary nodes).
OR
B. Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases.
OR
C. Recurrent carcinoma, except local recurrence that remits with anticancer therapy.
OR
D. Small-cell (oat cell) carcinoma.
OR
E. With secondary lymphedema that is caused by anticancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity. (See 13.00K4b.) Consider under a disability until at least 12 months from the date of the surgery that treated the secondary lymphedema. Thereafter,

14

fibromyalgia. She considered the pain and physical limitations that might be caused by fibromyalgia, however, explicitly incorporating her more searching RFC analysis. (R. 13)

The claimant attacks these findings, and urges that the ALJ failed to consider the impairments in combination. She argues that that these listed impairments, in combination with the unlisted impairments of fibromyalgia and headaches, add up to the equivalent of a listed impairment. The objection is not well-taken, because the ALJ properly dealt with the medical and non-medical evidence in reaching her conclusion that the claimant was not impaired to a degree that was equivalent to the listed impairments. In doing so, she considered and incorporated by reference her analysis of the actual extent of impairment in connection with the RFC analysis. (R. 13)

The ALJ took into account the claimant's symptoms, as reported by her and a relative, and her claim that depression, anxiety, pain, and other symptoms precluded all work. (R. 16) The claimant stated, for example, that she had severe back pain and almost no use of her hands; that her knee problems prevented her from navigating stairs very well; that she has IBS and visits the bathroom seven times per day; that she has migraines lasting 2 days; that she has arthritis in her chest and sternum; that at times she cannot open a jar, and that approximately four days per week she cannot get out of bed or put on her pants. (R. 16)

The ALJ found that the symptoms' reported intensity was not "consistent with the medical evidence." (R. 17; *see also* R. 20.) To take two examples, there was a history of breast cancer, but it was in remission with marked improvement; her testimony as to migraines lasting two days was not consistent with the claimant's failure to report migraines, nausea, or vomiting, to her primary care physician. (R. 17)

---

evaluate any residual impairment(s) under the criteria for the affected body system.

Treatment records of Mark Druck, as far back as 2013, showed breast cancer in remission, with no indication of soft tissue or spinal sequelae, such as recurrent mass at the mastectomy beds or osseous metasatic disease. A November 2014 whole-body PET scan showed marked improvement. In an April 2015 consultative exam, the claimant reported no major radiation, chemotherapy or administration of Tamoxifen, and scans showed no metastasis. (R. 18)

The medical records showed no evidence for mediastinal or hilar lymphadenopathy, no pleural or pericardial effusion, no adrenal mass, no appreciable intraparenchymal mass or infiltrate, no pneumothorax, and no obvious destructive lytic or blastic osseous lesions. The evidence did not demonstrate that Plaintiff's breast cancer was inflammatory, with direct extension to the chest wall or skin, or with metastases to the ipsilateral internal mammary notes; metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases; or recent carcinoma, small-cell (oat cell) carcinoma, or secondary lymphedema caused by Plaintiff's anti-cancer therapy, treated surgically to salvage or restore the functioning of an upper extremity (R. 13). Plaintiff does not point to any significant oversight in the ALJ's treatment of the evidence demonstrating that the criteria of Listing 13.10 were not met.

In December 2013, Dr. Druck found a small left C6-7 protrusion in the spine, and an abnormal signal in the C6 vertebral body. (R. 17) In April 2015, X-rays showed mild degenerative changes in the thoracic spine and cervical spine. (R. 17)

Also relevant to degenerative joint disease and fibromyalgia was Dr. Scarpa's prescription of Lyrica and Cymbalta in February 2014. Symptoms improved, and in April 2015 he discontinued Flexeril. In Dr. Hoffman's consultative orthopedic examination, Ms. Molesky reported back and shoulder pain. He, too, observed clear lungs and no breathing difficulties. Straight leg raising was 50-55 degrees on one leg, and 60 degrees on the other. Knee flexion and reflexes were intact. Grip strength and arm strength were good with full

range of motion of the wrists and elbows. The claimant could stand on one leg, bend at the knee more than halfway, flex 50 degree at the waist, and walk on heels and toes. Dr. Hoffman noted that she walked with a cane and was able to get on and off the examining table. (R. 17)

Dr. Hoffman found that the claimant could walk without an assistive device. The ALJ, as was her prerogative, gave this finding "much weight" because it was consistent with Dr. Hoffman's "relatively benign clinical findings."

Treatment records of Dr. Jurado through June 2016 showed good improvement of fibromyalgia pain with medication. The claimant denied headaches, but complained of anxiety, depression, and bone pain. In both 2014 and 2016, however, musculoskeletal and neurological examination results were within normal limits. (R. 18)

In short, the ALJ dealt appropriately with the medical and other evidence, citing it, sifting it, and giving reasons for crediting or discounting various aspects of it. The analysis, moreover, bespeaks a holistic approach; in addition to citing the Step 3 "in combination" standard, the ALJ clearly considered the combined effect of all of the impairments.[7] Substantial evidence support her findings.

### C. Analysis: RFC

The claimant also challenges the ALJ's formulation of her residual functional capacity. That assessment, however, was accompanied by an exhaustive analysis of the evidence, partially summarized above. As is common, the attack on the RFC to a great degree amounts to an attack on the underlying fact-finding, which I have already discussed.

The ALJ summarized the upshot of her conclusions, linking them to the underlying evidence:

---

[7] Indeed, as the SSA points out, the ALJ rejected certain state agency doctors' conclusions, unfavorable to the claimant, precisely *because* they failed to consider the impairments in combination. (R. 20)

17

> In sum, the above residual functional capacity assessment is supported by the evidence of record, which demonstrates breast cancer in remission with no metastasis.  The evidence shows fibromyalgia, PTSD, and anxiety disorder with improved symptoms with the claimant's course of treatment for these conditions. The claimant ended mental health treatment in June 2014 and did not restart such mental health treatment until July 2016.The evidence also demonstrates degenerative disc and joint disease with persistent symptoms despite treatment.  Although the claimant testified to having migraines that last two days and cause her nausea and vomiting, this is unsupported by the primary care provider's treatment notes and the pharmacy logs (Exhibits 12F, 16E, l 7E). In addition, the above residual functional capacity assessment sufficiently considers the claimant's subjective complaints, as well as her own-reported retained physical capacity to perform tasks such as activities of daily living despite her musculoskeletal, cancer, and neurological impairments. The evidence also sufficiently considers the claimant's self-reported retained mental capacity to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt and manage oneself despite her psychiatric impairments.

(R. 20)

I find that these facts, supported by the opinion of the VE, are consistent with the limitations of the RFC

> . . . light work as defined in 20 CFR 404.1567(b) except she can occasionally push and pull and climb ramps and stairs.  She can never climb ladders ropes, or scaffolds.  She can occasionally balance and stoop, and never kneel, crouch, or crawl.  She can frequently reach, occasionally overhead, and frequently handle and finger.  The claimant must avoid concentrated exposure to extreme temperatures, wetness, humidity, hazardous machinery and unprotected heights.  In addition, the claimant is limited to performing unskilled work with only occasional changes in the work setting and only occasional interaction with the public.  She is further limited to work allowing her to be off-task for up to 10% of the workday, and to be absent from work for 1 day per month.

(R. 15)

**Conclusion**

      For the foregoing reasons, the decision of the Commissioner is affirmed. An appropriate order accompanies this Opinion.

Dated: April 26, 2020

                                            /s/ Kevin McNulty

                                            _____

                                            **Hon. Kevin McNulty**
                                            **United States District Judge**